STATE OF NORTH CAROLINA v. LEROY ANDRE' MAYFIELD

No. 7512SC658

(Filed 7 January 1976)

1. **Criminal Law § 57— expert firearm testimony — sufficiency of evidence of expertise**

    The trial court properly allowed a detective to testify that a gun found in defendant's car would fire, since evidence that the witness was a first sergeant in the Infantry for 20 years and had examined pistols thousands of times was sufficient to support a finding of expertise.

2. **Criminal Law § 102— improper jury argument — curative instruction sufficient**

    In a prosecution for the armed robbery of a convenience store employee, the solicitor's improper jury argument that there had been

many robberies of convenience stores in the county and that "we've got to do something about it to put a stop to it" was not prejudicial to defendant, since the court instructed the jury not to consider the remark and that the case was to be decided on the evidence heard by them about this particular case and not what happened at some other time.

APPEAL by defendant from *Hobgood, Judge.* Judgment entered 11 April 1975, Superior Court, CUMBERLAND County. Heard in the Court of Appeals 17 November 1975.

Defendant entered a plea of not guilty to an indictment charging him with armed robbery.

Evidence for the State tended to show the following: Mrs. Carolyn Sudbury was manager of the 7-11 Store on Hope Mills Road in Cumberland County and was working there without help on the night of 4 December 1974. About 9:25 she noticed an orange Volkswagen had been driven into the parking lot and parked next to her car at the end of the building. When the last customer had gone, the Volkswagen was backed across the lot and parked at the gasoline pumps. There were two men in the car. One came into the store and one stayed at the car. The one who came in the store was later identified as Moore and the one who stayed outside at the pumps was later identified as defendant. Moore told Mrs. Sudbury that he wanted $1.50 worth of gas and she activated the computer which controlled the amount of gas flowing from the pump, but the console clicked off before the requested amount of gas had been pumped and Mrs. Sudbury pointed this out to Moore. Moore went over to the console where she was standing and looked at it. He then pulled a small handgun from his pocket, pointed it at her, and told her to open the cash register. As she was doing this she noticed that defendant was coming across the parking lot. He came into the store and stood beside Moore, approximately three feet from Mrs. Sudbury. Moore told Mrs. Sudbury to go to the back of the store. As she was walking to the back of the store she glanced at the counter and saw defendant with one hand in the cash register drawer and the other, poised above it clutching bills. Moore locked Mrs. Sudbury in the cooler. Through a window in the cooler, she watched them leave the store. She then let herself out of the cooler and called the sheriff. While making the call, she saw them leave the parking lot in the orange Volkswagen.

Some 15 minutes later, the Volkswagen was stopped about four miles from the store. Defendant was driving and Moore was seated on the passenger's side in the front. The officers found a small, loaded .22 handgun protruding from under the seat of the car. Later, defendant consented to a search of the car, and $104 was found in a compartment under the back seat directly behind the driver's seat. This was exactly the amount taken from the store.

Defendant's evidence tended to show: He and Moore were in the 82nd Airborne Division, Infantry, stationed at Fort Bragg. They had agreed to get defendant's family together with Moore and his girl friend during the day. Moore asked defendant to drive him on an errand and after they had driven a considerable distance, defendant decided he needed gasoline. They stopped at the 7-11, and Moore went inside to tell the clerk how much gas they wanted. When the pump clicked off before it had pumped the requested amount, defendant went in the store to investigate and found Moore conducting a robbery. He denied knowing anything about Moore's plan to rob the store and said the money Mrs. Sudbury saw in his hand was the money for the gasoline. He drove the car after the robbery only because Moore directed him to. Defendant's wife testified that Mrs. Sudbury told her that she paid no attention to the second man involved.

There was clear identification evidence and the defendant does not contest the identification procedure.

The jury found defendant guilty, and he appeals from judgment entered on the verdict.

*Attorney General Edmisten, by Elizabeth R. Cochrane, Associate Attorney, for the State.*

*Daniel T. Perry III, for defendant appellant.*

MORRIS, Judge.

[1] On appeal defendant first contends that the court erred in allowing Detective Burns to testify that the gun found in the car would fire, because the witness was not an expert. "To be an expert the witness need not be a specialist or have a license from an examining board or have had experience with the exact type of subject matter under investigation, nor need he be engaged in any particular profession or other calling.

State v. Mayfield

It is enough that, through study or experience, or both, he has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject." 1 Stansbury, N. C. Evidence (Brandis Rev.), § 133, at 429. Here the witness testified that he was a first sergeant in the Infantry for 20 years and had examined pistols thousands of times. While the court did not expressly find the witness to be an expert, he did allow him to give his opinion. By admitting the testimony, the court presumably found him to be an expert. *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735 (1972). The evidence was sufficient to support a finding of expertise. This assignment of error is overruled.

[2] Toward the close of his jury argument, the solicitor stated:

"Ladies and gentlemen, you know that we have been having a great many of these type robberies of convenience stores here in our county, and we've got to do something about it to put a stop to it."

Defendant objected, and the court sustained the objection and instructed the jury not to consider the remark, that this case was to be decided on the evidence heard by them about this particular case and not what happened at some other time. Conceding that the solicitor's remark was improper, nevertheless any error was cured by the court's prompt instruction to the jury to disregard it followed by an instruction that they were to decide this case only on the evidence in this case and not to consider what might have happened at some other time and place. The manner of conducting the argument of counsel must be left largely to the discretion of the trial judge.

" 'It is only in extreme cases of the abuse of the privilege of counsel, and when this is not checked by the court, and the jury is not properly cautioned, this Court can intervene and grant a new trial.' " (Citation omitted.) *State v. Barefoot,* 241 N.C. 650, 657, 86 S.E. 2d 424 (1955).

The two remaining assignments of error are directed to the charge of the court to the jury. The purported exceptions do not point out the particular portions of the charge to which defendant objects, nor do the assignments of error indicate what defendant contends the court should have charged. Suffice it to

say, our examination of the court's instructions do not reveal prejudicial error.

No error.

Judges BROCK and BRITT concur.