STATE OF NORTH CAROLINA v. EDWARD CARL SCOTT

No. 8312SC1319

(Filed 4 December 1984)

1. **Automobiles and Other Vehicles § 127.1— driving under the influence—sufficiency of evidence**
    The State's evidence was sufficient to support conviction of defendant for driving under the influence where it tended to show that defendant emerged from a wreck smelling of alcohol, later admitted that he had had two beers during the night, appeared to be "high," and drove in an erratic and dangerous manner greatly in excess of the speed limit though the road and weather conditions were unfavorable.

2. **Criminal Law § 90— no impeachment of State's own witnesses**
    The State did not impeach its own witnesses when the prosecutor asked the witnesses about prior written statements they had made, since their credibility was not attacked.

    Judge HEDRICK concurs in the result.

    Judge BECTON dissenting.

APPEAL by defendant from *Bowen, Judge*. Judgment entered 4 August 1983 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 20 September 1984.

Because of one traffic accident, defendant was charged with involuntary manslaughter in violation of G.S. 14-18; driving under the influence in violation of G.S. 20-138; driving too fast for the

weather conditions in violation of G.S. 20-141; unlawfully display-
ing a fictitious registration plate in violation of G.S. 20-111; driv-
ing while license revoked in violation of G.S. 20-28; and driving
without insurance in violation of G.S. 20-313. He pled guilty to the
license, registration and insurance charges and was tried and
found guilty of the three other charges. His appeal is from the
trial convictions.

The State's evidence tended to show that: At 4:30 o'clock in
the morning on 6 February 1983, defendant was driving a 1972
Cadillac on U.S. 401 about five miles south of Fayetteville when
the car collided with a vehicle traveling in the opposite direction
occupied by Edwin Newton, Jr., who died from the collision. The
wreck occurred on defendant's wrong side of the road. The high-
way was wet and driving conditions were bad. Earlier that night
it had snowed, but without any accumulation on the highway, and
was raining when the accident occurred. The speed limit for that
area was 45 miles an hour. Defendant's car passed a stranded
motorist, Staiert Porter, about a mile from the accident scene
traveling between 65 and 70 miles an hour, and when the car
entered a curve it straddled the center line of the highway, but
straightened up as it continued down the highway. About an hour
and a half before the collision, Johnathan Ray saw defendant at a
disco club in Raeford and the defendant had a beer in his hand,
but Ray did not see him drink any of it. In Ray's opinion defend-
ant "didn't seem drunk, but seemed like he was high." About an
hour later, while driving home at a speed of about 55 miles an
hour, Ray saw defendant's Cadillac pass him and another car
traveling at a speed of about 100 miles an hour. When defendant's
car approached his from the rear, it was straddling the center line
and Ray pulled his car as far to the right as he could. After
traveling on down the road a short distance, Ray saw the head-
lights of a car going in the opposite direction go out and then ar-
rived at the scene of the wreck. After the wreck when Officer
Baxley questioned defendant at the hospital, defendant admitted
drinking two beers that evening. While being treated for his in-
juries and after having an I.V. placed in his arm, defendant re-
fused to submit to a blood alcohol test, saying he did not want to
be stuck with any needles. The test was requested because Of-
ficer Baxley saw some beer cans in defendant's car and smelled
the odor of alcohol on defendant's breath.

*Attorney General Edmisten,* by *Assistant Attorney General Grayson G. Kelley, for the State.*

*Assistant Public Defender Stephen C. Freedman for defendant appellant.*

PHILLIPS, Judge.

[1] One of the two main contentions asserted by defendant is that the evidence presented was not sufficient to warrant defendant's conviction of driving under the influence. Two of the three elements of the offense—that at the time charged defendant was driving a motor vehicle upon a public highway—were clearly established and are not in dispute. The dispute is only whether the evidence was sufficient to show that defendant was under the influence of intoxicating liquor at the time. G.S. 20-138, repealed by Session Laws 1983, c. 435, s. 23, effective October 1, 1983. Testimony that defendant emerged from this wreck smelling of alcohol, later admitted that he had had two beers during the night, appeared to be "high," and drove in an erratic and dangerous manner, greatly in excess of the speed limit though the road and weather conditions were unfavorable, was sufficient, in our opinion, under the rule laid down in *State v. Hewitt,* 263 N.C. 759, 140 S.E. 2d 241 (1965), to warrant the jury in concluding that he was under the influence of an intoxicating liquor. *See Atkins v. Moye,* 277 N.C. 179, 176 S.E. 2d 789 (1970); *State v. Cartwright,* 12 N.C. App. 4, 182 S.E. 2d 203 (1971).

[2] The defendant's other main contention is that the court, to defendant's prejudice, improperly permitted the State to impeach its own witnesses. In two instances the State, disappointed with the halting testimony of its witnesses, asked them to read portions of their written statements to the jury. The first instance involved State's witness Staiert Porter, who first expressed the opinion that defendant's speed at the curve a mile before the collision was 65 to 75 miles an hour; but upon "refreshing his recollection" by reading from his statement, he opined that the speed was 80 miles per hour. The second instance involved State's witness Johnathan Ray, who, when first asked about defendant's physical appearance two hours before the accident, responded that he "didn't appear to be drinking"; but when referred to his

State v. Scott

statement, he responded, "I never said I saw him drinking . . . I seen him with a beer, yeah." And then the following took place:

Q. All right, sir. Do you recall what your answer was back on February 11th, 1983?

A. February 11th?

Q. Yes, sir.

A. He had a beer in his hand.

Q. All right, sir. And did you go on to say something else after that?

. . . .

A. I said, "Yes, he had a beer in his hand. He didn't seem drunk but he seemed like he was high."

Our law is that though the State may not impeach its own witness, the trial judge, in his discretion, upon it appearing that the State has been genuinely misled or surprised, can permit the witness to be questioned about prior inconsistent statements. 1 Brandis N.C. Evidence § 40 (1982). Actually what the prosecutor did was not impeach the witnesses, since their credibility was not attacked, but ask them leading questions, which does not justify a new trial unless prejudice is shown. *State v. Young*, 291 N.C. 562, 231 S.E. 2d 577 (1977). And here the leading questions were not prejudicial to defendant. Porter's revised statement only added five miles to defendant's speed, which was grossly excessive under any view of the evidence, and evidence as to defendant's intoxication and irresponsible driving was overwhelming without Ray's addendum.

The defendant's several other assignments of error, which require no discussion, are likewise without merit.

No error.

Judge HEDRICK concurs in the result.

Judge BECTON dissents.

State v. Scott

Judge BECTON dissenting.

In the midst of defendant's ten arguments, set forth in forty-nine pages of his brief, are two assignments of error which the majority summarily dismisses and which I believe have merit. Defendant assigns error to the trial court's actions (a) overruling defendant's objection to the prosecutor's closing argument and (b) denying defendant's motion for mistrial based on the prosecutor's closing argument. Believing that the trial court improperly allowed the prosecutor to suggest to the jury that it could and should be influenced by public pressure, community expectations, public favor, and emotion, I dissent.

Over objection, the prosecutor was allowed to make the following argument to the jury:

> Now, we often hear, we often read in the paper or hear on television or anything else, something that happens there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway. And, you know, you read these things and you hear these things and you think to yourself, 'My God, they ought to do something about that.' Well, Ladies and Gentlemen, . . . the buck stops here. You twelve jurors in Cumberland County have become the 'they.'

The prosecutor's appeal to some alleged community interest in convicting the defendant in this case based on community expectations about what should be done in cases in general draws the minds of the jurors away from the matters in evidence and subjects them to influences outside the case. While I am not so far from the practice of law that I stand ready to dampen the zeal of trial advocates who seek to argue the whole case as well of law as of fact, I feel constrained by *State v. Mayfield*, 28 N.C. App. 304, 220 S.E. 2d 643 (1976). In *Mayfield*, the prosecutor argued: "Ladies and gentlemen, you know that we have been having a great many of these type robberies of convenience stores here in our county, and we've got to do something about it to put a stop to it." 28 N.C. App. at 307, 220 S.E. 2d at 644-45. The trial court sustained defendant's objection to the remarks and instructed the jury not to consider the remarks. In *Mayfield*, this Court said: "Conceding that the solicitor's remark was improper, nevertheless any error was cured by the court's prompt instruction to

the jury to disregard it followed by an instruction that they were to decide this case only on the evidence in this case and not to consider what might have happened at some other time and place." 28 N.C. App. at 307, 220 S.E. 2d at 645. In this case, there was obviously no curative instruction because defense counsel's objection was overruled. *State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144 (1983) also provides support for the position I reach. In *Kirkley*, the prosecutor, in his argument to the jury, stated in part: "I am asking you to impose the death penalty as a deterrent, to set a standard of conduct. . . ." 308 N.C. at 215, 302 S.E. 2d at 155. Although Kirkley's conviction was reversed on other grounds, the Supreme Court found the statement to be an improper interjection of the prosecutor's personal viewpoint. Based on *Mayfield* and *Kirkley*, I believe the defendant is entitled to a

New trial.